UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LINA RULO, Individually and as Personal Representative of the Estate of RICHARD A. RULO, SR., deceased, ) ) ) ) Plaintiff, ) ) vs. ) ) AUSTON C. TURNER, et al., ) ) Defendants. ) | Case No. 4:19CV318 JCH |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant City of Iron Mountain Lake, Missouri's Motion to Dismiss, filed March 19, 2019. (ECF No. 4). The motion is fully briefed and ready for disposition.

## BACKGROUND[1]

On May 8, 2017, Decedent Richard A. Rulo, Sr. was driving from his place of employment in Iron Mountain Lake, Missouri to his residence. (Compl., ¶ 16). As Decedent approached his home, Defendant Jermaine Sails ("Sails"), a police officer and agent, servant and employee of the City of Iron Mountain Lake ("City") and the Iron Mountain Lake Police Department, activated his police car's emergency lights in order to stop Decedent's vehicle. (*Id.*, ¶¶ 11, 18).[2] Decedent stopped at his mailbox to retrieve his mail, and then pulled into the

---

[1] The Court's background section is taken from Plaintiff's Complaint, to which Defendant City of Iron Mountain Lake has not yet filed an answer.
[2] According to Plaintiff, at the time of the incident Sails had been employed by Defendant City as a police officer for only four weeks, and had not yet been sworn in as a police officer or received any formal training. (Compl., ¶¶ 14, 15).

driveway of his private residence and exited his vehicle. (*Id.*, ¶ 19). Sails parked in Decedent's driveway behind Decedent's truck. (*Id.*).

According to Plaintiff, Sails told Decedent he pulled him over, "first of all," because Decedent was not wearing his seatbelt. (Compl., ¶ 20). Sails ordered Decedent to produce his driver's license and most recent insurance card. (*Id.*). When Decedent failed to produce his most recent insurance card[3], Sails returned to his police vehicle to write Decedent a citation. (*Id.*, ¶ 22). At that time, Decedent began complaining to Plaintiff, who had walked out onto the driveway. (*Id.*, ¶ 24).

After approximately eight to nine minutes, during which time Sails remained seated in his police car, Defendant Auston C. Turner ("Turner"), Chief of Police for the Iron Mountain Lake Police Department, arrived at Decedent's residence with his siren activated. (Compl., ¶¶ 7, 26). While Turner and Sails talked, Plaintiff stated, "Call [Defendant] Dustin [P. Steinc, Mayor of Iron Mountain Lake] over here, now." (*Id.*, ¶¶ 12, 27-29). At that, Plaintiff maintains Turner became angry, and walked quickly toward Decedent and Plaintiff stating, "You're both going to jail." (*Id.*, ¶ 30). When Decedent responded, "no, I'm not," Turner aggressively moved toward Decedent, grabbed Decedent, swept his legs out from underneath him, and slammed him violently to the ground. (*Id.*, ¶ 31). Turner and Sails then tackled Decedent and placed him in handcuffs, and Turner ordered Sails to charge Decedent with disorderly conduct and resisting arrest. (*Id.*, ¶¶ 31, 32).

While sitting in the police car, Decedent began having difficulty breathing. (Compl., ¶ 37). Emergency services were eventually called, and they transported Decedent to a hospital. (*Id.*, ¶ 38). Several hours later, while at the hospital, Decedent died. (*Id.*, ¶ 39). A May 10, 2017, autopsy determined Decedent's cause of death to be complications of coronary artery

---

3 Plaintiff maintains Decedent had current insurance.

disease, with the manner of death listed as homicide resulting from an altercation with police officers during a traffic stop. (*Id.*, ¶ 40).

Plaintiff filed the instant Complaint on February 26, 2019, claiming the force used by Turner and Sails was unnecessary, excessive and oppressive, and caused Decedent to suffer physical injury and emotional distress. (Compl., ¶¶ 35, 37). Plaintiff lodged the following counts against Defendant City: Municipal Liability for Failure to Train, Supervise, Control and Discipline, and for Unconstitutional Customs and Practices, Cognizable under 42 U.S.C. § 1983 (Count III); Wrongful Death, Cognizable under Missouri State Law (Count V); False Arrest and Imprisonment, Cognizable under Missouri State Law (Count VI); and Assault and Battery, Cognizable under Missouri State Law (Count VII). As stated above, Defendant City filed the instant Motion to Dismiss on March 19, 2019, claiming all of Plaintiff's claims against it must be dismissed for failure to state a claim upon which relief may be granted. (ECF No. 4).[4]

## STANDARD FOR MOTION TO DISMISS

In ruling on a motion dismiss, the Court must view the allegations in the complaint in the light most favorable to plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). The Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). The complaint's factual allegations must be sufficient "to raise a right to relief above the speculative level," however, and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Furthermore, "the tenet that a court must accept as true all of the allegations contained in a

---
[4] Defendant City requests that Counts I, II and IV be dismissed. Because the City is not named as a Defendant in those Counts, the Court will not address Defendant City's arguments in favor of their dismissal.

complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555 (pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do)).

## DISCUSSION

### I. Municipal Liability

In support of its Motion to Dismiss, Defendant City maintains Plaintiff has failed to state a claim against it, because she has not identified any unconstitutional policies or customs pursuant to which her constitutional rights were violated. Specifically, Defendant City claims Plaintiff's allegations of failure to train and supervise, turning a blind eye to Turner's history of aggressive behavior, negligent hiring with respect to Defendant Sails, failure to require Peace Officer Standard Training, and improper enforcement of Missouri's seatbelt ordinance, are merely conclusory and thus deficient.

Plaintiff's Complaint includes, among others, the following allegations of wrongdoing on the part of the City:

(1) that Defendant City (together with the Iron Mountain Lake Police Department) failed to implement and/or enforce any written policies or procedures pertaining to its police officers' duties, including policies pertaining to probable cause to arrest or the use of force by its police officers, when it was obvious that said failure would likely result in unlawful conduct by its officers, including the use of excessive force;
(2) that Defendant City failed to provide adequate training to, and supervision of, Defendant Turner, even though it knew of or turned a blind eye to his history of aggressive behavior in his dealings with citizens;
(3) that Defendant City hired Defendant Sails, despite or without investigation into his prior criminal history, *i.e.*, pleading guilty to sexual misconduct in the first degree and falsely impersonating a police officer, and then failed to provide Sails with training; and
(4) that Defendant City failed to take action in the face of misconduct by Iron Mountain Lake Police Department officers about which it knew or should have known, including officers unlawfully stopping and detaining citizens and issuing citations for violations of the City's seatbelt ordinance in order to

> raise funds for the City, hiring untrained and unqualified persons to serve as police officers, and failing to provide said officers with necessary training and supervision.

(Compl., ¶¶ 59, 61-62, 63, 65-67). Plaintiff further alleges the constitutional violations of Defendants Turner and Sails were undertaken pursuant to the policies, practices, and/or customs of the Iron Mountain Lake Police Department, whose officers Defendant City failed properly to train or supervise. (*Id.*, ¶ 67).

A municipality or local government may be sued directly under § 1983 when that local government implements an unconstitutional policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). A municipality may not be sued under § 1983, however, for injuries inflicted solely by its employees or agents. *Id.* at 694. Rather, a plaintiff must plead that her injury was caused by the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id. See also McKay v. City of St. Louis, Mo.*, 2016 WL 4594142, at *5 (E.D. Mo. Sep. 2, 2016) (citing *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998)) ("Such a showing ultimately requires proof of either the existence of an official municipal policy or misconduct so pervasive among non-policymaking employees of the municipality as to constitute a custom or deliberate indifference to individuals' federal rights.").[5]

"Policy" and "custom" are not interchangeable concepts. "Official policy involves a deliberate choice to follow a course of action…made from among various alternatives by an official who [is determined by state law to have] the final authority to establish governmental policy." *Ware*, 150 F.3d at 880 (internal quotations and citation omitted). A policy may take the form of a policy statement, local ordinance, regulation, or decision officially adopted and

---

[5] "A policy is deliberately indifferent to a person's constitutional rights when its inadequacy is both obvious and likely to result in the alleged deprivation of constitutional rights." *Russell v. Hennepin County*, 420 F.3d 841, 847 (8th Cir. 2005) (citation omitted).

promulgated by a local government's officers. *Monell*, 436 U.S. at 690. In contrast, a custom is demonstrated by (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the municipality's employees; (2) deliberate indifference to or tacit authorization of such conduct by the municipality's policymaking officials after notice to the officials of that misconduct; and (3) the § 1983 plaintiff's injury by acts taken pursuant to the municipality's custom, *i.e.*, proof that the custom was the moving force behind the constitutional violation. *Ware*, 150 F.3d at 880. While a § 1983 plaintiff must include allegations, references, or language by which one could begin to draw an inference that the conduct of which she complains resulted from an unconstitutional policy or custom, she need not specifically plead the existence of the unconstitutional policy or incorporate its specific language into her complaint. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). This is because at the time her complaint is filed, "a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs which may have caused the deprivation of a constitutional right." *Doe ex rel. Doe v. School Dist. Of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Upon consideration of the foregoing, the Court finds Defendant's arguments in favor of dismissal are more properly addressed on summary judgment, with a full record before the Court. For example, the City faults Plaintiff for failing to assert facts demonstrating the "obvious need" for policies pertaining to probable cause to arrest or the use of force by officers, in order to avoid situations involving unlawful conduct by its officers, including the use of excessive force. The case cited by the City in support of this assertion, however, *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (8th Cir. 2013), was disposed of by the District Court on summary judgment, and the Eighth Circuit affirmed because the plaintiff's claims were unsupported by any *evidence* in the record. *Id.* at 1215-16. The same holds true for Plaintiff's

other allegations; in other words, Plaintiff's allegations support a reasonable inference that Defendant City failed to provide adequate training to, and supervision of, Defendant Turner; that it hired Defendant Sails, despite or without investigation into his prior criminal history, and failed to provide Sails with training; and that it failed to take action in the face of misconduct by Iron Mountain Lake Police Department officers about which it knew or should have known. The Court therefore will not dismiss Plaintiff's claims at this time, but instead will permit her to engage in discovery to develop further the factual bases for her claims.[6]

## II. Sovereign Immunity

Defendant City next asserts sovereign immunity bars Plaintiff's state law claims. Under Missouri law, "[a] municipality has sovereign immunity from actions at common law tort in all but four cases: (1) where a plaintiff's injury arises from a public employee's negligent operation of a motor vehicle in the course of his employment (section 537.600.1(1)); (2) where the injury is caused by the dangerous condition of the municipality's property (section 537.600.1(2)); (3) where the injury is caused by the municipality performing a proprietary function as opposed to a governmental function; and (4) to the extent the municipality has procured insurance, thereby waiving sovereign immunity up to but not beyond the policy limit and only for acts covered by the policy (section 537.610)." *Bennartz v. City of Columbia, Mo.*, 300 S.W.3d 251, 259 (Mo. App. 2009) (internal citation omitted).

In her Complaint, Plaintiff alleges as follows: "Upon information and belief, at all times relevant, Defendant City had purchased and had in effect a policy of insurance to insure itself against claims or causes of action for damages caused by city employees engaged in government

---

6 The City's argument with respect to the identity of the final decisionmakers is also better suited for determination on summary judgment.

functions, including torts as described herein. The purchase of that insurance constitutes a waiver of sovereign immunity by Defendant City." (Compl., ¶¶ 104, 105).

Upon consideration, the Court finds Plaintiff's allegations sufficient to demonstrate the City may have waived its sovereign immunity against Plaintiff's Missouri tort claims, by procuring an insurance policy covering such liabilities. *See McKay*, 2016 WL 4594142, at *7. Under these circumstances, the Court again finds the issue of sovereign immunity is more properly addressed on summary judgment. This portion of Defendant City's Motion to Dismiss will therefore be denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant City of Iron Mountain Lake, Missouri's Motion to Dismiss (ECF No. 4) is **DENIED**.

Dated this 12th Day of June, 2019.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE